# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

January 31, 2020

**BY ECF**

Hon. Sarah L. Cave, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        ***Re:***    ***Barrera, et al. v. 1611 Food Mart Inc., et al.***
                 ***Case No. 19-CV-606 (SLC)***

Dear Judge Cave,

       We are counsel to the plaintiffs in the above-referenced matter, and jointly submit this letter together with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this dispute, which was negotiated at arm's length between experienced counsel and with the assistance of the Court during a settlement conference on November 21, 2019.

       ***I.***     ***The Need for the Court's Approval of the Agreement***

       As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Sarah L. Cave, U.S.M.J.
January 31, 2020
Page 2

## II.   *Plaintiffs' Claims for Unpaid Wages*

Plaintiffs assert causes of action pursuant to the FLSA and New York Labor Law, seeking recovery of, *inter alia*, unpaid minimum wages and overtime compensation. The plaintiffs consist of three (3) former employees of the defendants' dollar store (the "Store") who were hired to work in various capacities, including as stock persons, cashiers, porters, merchandise inspectors/quality controllers, and security personnel. The following is a brief synopsis as to each plaintiff's claim:

- Juan Chino Barrera

Mr. Barrera alleges working for the defendants from in or about May 2018 until on or about February 20, 2019.[1] Mr. Barrera alleges working six (6) days per week and, although his work shift fluctuated slightly each week, he alleges working approximately seventy-two (72) hours per week.

With respect to his pay, Mr. Barrera alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

> ➤ May 2018-August 2018: $650/week
> ➤ September 2018-February 20, 2019: $700/week

- Ismael Chino Barrera

Mr. Barrera alleges working for the defendants from in or about May 2018 until on or about December 26, 2018.[2] Mr. Barrera alleges working six (6) days per week and, although his work shift fluctuated slightly each week, he alleges working approximately seventy (70) hours per week.

With respect to his pay, Mr. Barrera alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

> ➤ May 2018-August 2018: $600/week
> ➤ September 2018-February 20, 2019: $650/week

- Apolinar Taveras Pichardo

Mr. Pichardo alleges working for the defendants from in or about June 2018 until on or about January 15, 2019.[3] Mr. Barrera alleges working six (6) days per week and,

---

[1] Neither at the time of his hire, nor anytime thereafter, did the defendants provide Mr. Barrera with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay.
[2] Neither at the time of his hire, nor anytime thereafter, did the defendants provide Mr. Barrera with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay.
[3] Neither at the time of his hire, nor anytime thereafter, did the defendants provide Mr. Pichardo with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay.

although his work shift fluctuated slightly each week, he alleges working approximately seventy-two (72) hours per week.

With respect to his pay, Mr. Pichardo alleges being paid on a daily basis straight time for all hours worked. He alleges being paid as follows:

- May 2018-August 2018: $50/day ($300/week)
- September 2018-January 15, 2019: $70/day ($420/week)

### III.   Defendants' Position.

Defendants contest a number of facts alleged by the plaintiffs, the most critical of which include the: (a) length of each plaintiff's period of employment, (b) hours plaintiffs worked, and (c) contention that plaintiffs are owed any unpaid wages.

Defendants dispute that the plaintiffs worked as long as each allege. For instance, the defendants maintain that the Store did not even open to the public until July 26, 2018 and, therefore, it is impossible that the plaintiffs worked from as early as May or June 2018 as alleged. Furthermore, the defendants contend that Juan Chino Barrera and Apolinar Taveras Pichardo both quit during the first week of January 2019. In all, the defendants contend that the plaintiffs collectively worked a total of approximately thirteen (13) months less than they allege. If proven correct, plaintiffs' potential recovery would have been significantly reduced.

With respect to plaintiffs' work hours, it is the defendants' position that the Barrera brothers worked eight (8) hour shifts, with a one (1) hour lunch break each day. Thus, according to the defendants, they worked a maximum of forty (40) hours each week and, therefore, were not only paid above the statutory minimum wage but are not entitled to any overtime compensation. As for Mr. Pichardo, the defendants contend that he worked even fewer hours because twice per week he left early to attend school. Any unpaid minimum wages owed to Mr. Pichardo would be *de minimis*.

In addition to the foregoing, the defendants claim sever financial hardship. In support of their position, the defendants provided defendant Padam Bajaj's 2018 Individual Income Tax Return, which shows gross wages of $45,000. The defendants also maintain that the corporate defendant did not gross in excess of the FLSA's $500,000 doing business threshold, and that any continued litigation should have proceeded in state court, which would have added significant delay to any resolution of this matter. Additionally, the defendants represent that the Store will be closing and Mr. Bajaj will begin driving a cab for future income.

### IV.   The Agreement is Fair and Reasonable

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of extensive arm's length negotiations. In considering whether a settlement is fair and reasonable, the

Hon. Sarah L. Cave, U.S.M.J.
January 31, 2020
Page 4

principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra,* 679 F. 2d at 1354)).

Here, this settlement was reached following a settlement conference before this Court, and as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $15,000.00 to resolve all of plaintiffs' wage and hour claims against the defendants, which is to be paid in a lump sum on or before February 21, 2020. Based on plaintiffs' alleged lengths of employment, hours worked, and pay received, plaintiffs' share of the settlement will be divided on a pro rata basis as follows: Juan Chino Barrera (33.13%), Ismael Chino Barrera (27.36%), and Apolinar Taveras Pichardo (39.51%).

Plaintiffs calculated that had they prevailed at trial on *all* of their claims, they could have recovered approximately $61,000 in unpaid minimum wages and overtime compensation, plus an equal amount in liquidated damages. However, as discussed above, we believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiffs' claims, and the potential difficulty in collecting a larger settlement or judgment against the defendants.

Indeed, as referenced *supra*, one concern tending toward settlement was plaintiffs' legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a dollar store with limited financial resources, which is not expected to continue operations. The Agreement significantly decreases the risk of collection by requiring the defendants to remit payment of the entire settlement sum within a few days of the Court's approval.

By settling now, plaintiffs at least receive a portion of their unpaid wages even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiffs, they made the decision to accept the defendants' offer.

Hon. Sarah L. Cave, U.S.M.J.
January 31, 2020
Page 5

### V. Application for Attorneys' Fees

"Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorneys' fees." *Babayeva v. Halstead Managing Corp.*, No. 16 Civ. 3794, 2018 U.S. Dist. LEXIS 195229, at *9 (S.D.N.Y. Nov. 15, 2018) (*quoting Andrews v. City of New York*, 118 F. Supp. 3d 630, 634-35 (S.D.N.Y. 2015)).

Pursuant to this firm's retainer agreement with plaintiffs (copies attached), our firm is to retain one-third the net proceeds of the settlement after costs are deducted. However, in an effort to get this matter resolved, plaintiffs' attorneys' have agreed to waive all costs expended. Thus, plaintiffs' counsel request a fee award of $5,000, which is less than the firm's lodestar. A contingency fee is presumptively valid where 'the proposed fee is exactly one-third of the net settlement amount, which is routinely approved under the percentage method' in this District, 'particularly where it is pursuant to a previously negotiated settlement agreement.'" *Babayeva*, 2018 U.S. Dist. LEXIS 195229, at *10 (*quoting Yunjian Lin v. Grand Sichuan 74 St. Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018)). As such, the amount requested here, as one-third of the gross settlement amount (without deduction for costs) is presumptively valid and, thus, should be approved.

To date, plaintiffs' counsel have expended in excess of $10,000 in fees. Our billing rate on this matter is $400 per hour, which has been routinely approved as reasonable by the Courts within this District. *See Chirix, et al. v. Lupe's East L.A. Kitchen, Inc., et al.*, No. 18 Civ. 819 (DCF) (S.D.N.Y. July 19, 2019); *Castaneda, et al. v. Natural Crop Inc., et al.*, No. 17 Civ. 4258 (PK) (E.D.N.Y. Jan. 8, 2019); *Garcia, et al. v. Good For Life by 81 Inc., et al.*, No. 17 Civ. 7228 (BCM) (S.D.N.Y. July 12, 2018); *Rescalvo v. BTB Events & Celebrations Inc.*, No. 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.*; No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DCF) (S.D.N.Y. 2016).

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

Justin Cilenti

cc: Stephen D. Hans, Esq. (by ECF)